139 So.2d 15 (1962)
Frank GIORDANO
v.
Albert J. TULLIER, Sr.
No. 236.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 1962.
Rehearing Denied April 2, 1962.
*16 Cahn & Provensal, Sidney W. Provensal, Jr., New Orleans, for plaintiff-appellee.
Martin & Slater, Emile E. Martin, III, Benj. R. Slater, Jr., Port Sulphur, and Jerry A. Brown, New Orleans, for defendant-appellant.
Before REGAN, YARRUT and HALL, JJ.
LUTHER E. HALL, Judge pro tem.
The instant suit was filed on April 30, 1959 in the Twenty-fifth Judicial District Court for the Parish of Plaquemines by Frank Giordano, a former Registrar of Voters of said parish, against the defendant, Albert J. Tullier, Sr. In it Giordano seeks damages for malicious prosecution by Tullier of a civil suit which Tullier had filed against him individually and as Registrar of Voters for Plaquemines Parish in the United States Court for the Eastern District of Louisiana, and for alleged libellous matter contained in the pleadings thereof.
The defendant, Tullier, filed exceptions of no cause of action and of prescription which were overruled by the trial court and after a hearing on the merits judgment was rendered in favor of plaintiff, Giordano, in the sum of $17,914.74 plus interest and costs. The defendant, Tullier, prosecutes this appeal from that judgment. Plaintiff answered the appeal and prayed that the amount of the judgment be increased to $38,189.74 and as thus amended it be affirmed.
The suit in the Federal Court which is the basis of the controversy here was filed by Tullier under the Civil Rights Act (42 U.S.C.A. § 1983) on December 15, 1955. In this suit he prayed that Giordano as Registrar of Voters be ordered to register him as a voter in Plaquemines Parish. He also prayed for $5,000.00 damages against Giordano personally.
In his complaint in the Federal Court, Tullier alleged that he appeared at Giordano's office on September 12, 1955 for the purpose of registering to vote. The following averments inter alia were made in his complaint which he signed and swore to:

*17 "5.
"b) Complainant entered the office of defendant during proper office hours, was handed a printed application blank in the form required by law which he filled out adequately and correctly in every detail and returned to defendant.
"7.
"b) Defendant informed complainant that this was a `New Law', and that he could not register unless he complied literally therewith. Thereupon complainant being confused and dismayed by the turn of events left the office and returned to his home. Defendant's attitude was designed to and did induce the belief that some great and novel change had been made in the registration and electoral laws of the State which would render it difficult if not impossible for a person of complainant's education and standing to qualify to vote. Complainant was given no reasonable opportunity to interpret said clauses or sections though he would have been able to do so if accorded a reasonable opportunity.
"8.
"Complainant further avers that defendant, Frank Giordano, has been Registrar of Voters for the Parish of Plaquemines since about 1950. Said defendant and, in fact, his predecessors in office for over two decades, have never pursued the procedure of requiring the reading of any section or clause of the Constitutions of Louisiana or of the United States by any voters of the race, type and circumstances of complainant (he being of the Caucasian or White race); or requiring of them a reasonable interpretation thereof. Likewise, in the case of voters unable to read or write said defendant and his predecessors in office for over two decades have never read any section or clause of the State or Federal Constitutions and required the giving of a reasonable interpretation thereof.
"9.
"Complainant now shows that within the last six months or year defendant, Frank Giordano, adopted the policy of propounding a written questionnaire on the Constitutions of Louisiana or of the United States to voters who were either politically opposed to him or whom he suspected of being hostile to the political faction with which he is aligned and which has controlled the politics and public affairs of the Parish of Plaquemines for over two decades. Within the past six months or year defendant registrar adopted a definite and deliberate policy of attempting to disqualify, disfranchise and keep from voting any and all persons whom he felt would vote contrary to his wishes or those of the political faction with which he is aligned; and in said period of time, said defendant registrar has required applicants who were suspect by him to read various clauses of the Constitutions of the United States and of Louisiana and to write out their interpretations of said clauses even though written answers are not required by law. In the case of illiterates i. e., those unable to read or write, defendant registrar required them to give a reasonable interpretation and exhibit an understanding of various sections of the Constitutions of Louisiana or of the United States when read to them.
"10.
"Despite the fact that defendant registrar has propounded written questionnaires to a large number of voters whom he considered or believed to be opposed to him or his political faction, said defendant has never hesitated to register without any constitutional interpretations or readings those voters of his own political faction, party or alignment. In fact he has assisted *18 them. Such policy and practice on the part of defendant was and is discriminatory and utterly null and void and complainant so pleads. Complainant annexes hereto for illustrative purposes a list of only a small number of those so registered and marks same Exhibit `A'. All of them are on the registration rolls and are in a position to vote in the January 17, 1956 Democratic Primary Election.
"14.
"Complainant further avers that defendant has adopted a system calculated to dominate and overawe prospective registrants in that he does not open his office to the public but takes each registrant at a time into a small office and there proceeds to frighten and disconcert them by demanding an interpretation of clauses or sections of the Constitutions of Louisiana and the United States at his whim and caprice.
"15.
"Complainant alleges that the above described practices and actions of defendant in discriminating against him while permitting others to register who were unable to pass any constitutional test has had the effect of depriving him of his right to vote not only for candidates in primary elections but also in federal elections, i. e., for Congress, United States Senator and President. Furthermore, complainant alleges that the nomination of candidates in Democratic primaries is equivalent to election of said candidates due to the dominant position of the Democratic Party in Louisiana. Plaquemines Parish has adopted the Permanent Registration Law."
Trial on the merits of this complaint was concluded in the Federal District Court on January 28, 1958. Judgment in favor of the defendant, Giordano, was rendered therein on February 8, 1958. The findings of the trial judge were that the evidence adduced did not substantiate the allegations of complainant, and that the actions of Giordano were not discriminatory so as to result in a denial of Tullier's constitutional rights. Tullier appealed and the appellate court affirmed the decision of the trial judge on March 24, 1959. (See 5 Cir., 265 F.2d 1).
Appellant's first assignment of error is that the District Judge erred in overruling his exception of prescription based on LSA-C.C. arts. 3536, 3537. Appellant concedes that in a suit for libel based upon allegations contained in judicial proceeding, the cause of action does not accrue until a trial has been had and there has been an opportunity to prove the truth or falsity of the alleged libellous allegations. See Manuel v. Deshotels, 160 La. 652, 107 So. 478; Howard v. Coyle, 163 La. 257, 111 So. 697; Lescale v. Joseph Schwartz Co., 116 La. 293, 40 So. 708. But appellant argues that the cause of action in the instant case accrued at the close of testimony in the Federal suit or in any event on the date the case was decided by the Federal District Judge since at that time the truth or falsity of Tullier's charges in the Federal suit were known to Giordano; and that this is especially so since one of the averments of Giordano's petition in the instant suit was to the effect that Tullier had admitted during the Federal Court trial that the charges made by him were untrue in whole or in part. Appellant also seems to concede that his argument would not apply to a suit for malicious prosecution, and attempts to draw a distinction as to when the cause of action accrues between a suit for libel based on judicial allegations in another suit, and a suit for malicious prosecution of that suit.
As we have pointed out this is both a suit for libel and for malicious prosecution. Moreover, our courts have never made the distinction argued for by appellant.
Manuel v. Deshotels, supra, cited by appellant was itself an action for libel. The Court said in that case:
"The contention of the appellees is that when a suit for damages for libel *19 is based upon allegations contained in another suit, the second suit must await the termination of the action wherein the defamatory averments are made. We think this is correct."
And in Carnes v. Atkins Bros. Co., 123 La. 26, 48 So. 572, the Supreme Court very clearly points out that where a plaintiff combines in the same action a claim for damages for the bringing of an alleged malicious civil suit with a claim for damages for an alleged libel contained in the pleadings of such suit, the rule that no legal injury results and hence that no cause and no right of action arises until the determination of such suit applies equally to both claims and the prescription of one year begins to run as to both, only when the suit is determined.
We are of the opinion that prescription in the instant case did not begin to run until the determination of the suit in the Federal Court, and that suit was of course not "determined" until final judgment on appeal. See Tenth Ward Road District No. 11 v. Texas & P. Ry. Co., 5 Cir., 12 F.2d 245, 45 A.L.R. 1513. Since the instant suit was filed within a year after the final decision on appeal of the Federal suit, the plea of prescription was properly overruled.
Appellant's next assignment of error is that the trial court erred in admitting in evidence over his objection:
a) The transcript of testimony taken in the Federal suit,
b) Certain newspaper articles,
c) A photostatic copy of the letter from the Board of Registration.
Taking these in order, we find that appellant objected to the introduction in evidence of the transcript of testimony of the witnesses taken in the Federal Court on the ground that testimony in another suit between the same parties, even for the same cause of action, cannot be used unless the witness is dead or absent or for other good cause cannot be produced. Appellant cites several decisions and several texts to this general effect, but we find no reason to discuss the point since the following were admitted in evidence without objection by appellant: (1) The petition filed in the Federal Court, (2) The findings of Fact and Law by the Federal District Judge, (3) The opinion of the Federal Court of Appeals and (4) The transcript of Tullier's testimony in the Federal suit; and we are of the opinion that those exhibits together with the testimony taken on the trial of this suit are amply sufficient to form the basis of a decision herein.
The newspaper articles objected to by appellant were articles appearing in the daily newspapers of New Orleans during the progress of the trial in the Federal Court which Giordano avers were damaging to his reputation. Appellant contends that the District Judge erred in admitting them in evidence since there is no proof that Tullier had anything whatever to do with their publication. He contends the general rule is that the original author of a libellous publication is not to be held liable for the voluntary republication or repetition thereof by others.
An exception to this rule exists where the republication is the natural and probable consequence of the defendant's act. See 53 C.J.S. verbo Libel and Slander § 85, at page 137; 53 C.J.S. verbo Libel and Slander § 264(d) at page 382; 33 Am.Jur. verbo Libel and Slander Sec. 197 at page 185.
We are of the opinion that the newspaper articles in question here were the natural and probable consequence of Tullier's act in filing the Federal suit. He caused the suit to be filed during a political campaign for a governor's election in Louisiana and selected as his counsel the chairman of the legal committee of one of the candidates for governor who very frankly testified that he took the case "just as my contribution towards my political faction's success". It strikes us that the primary purpose of the suit was publicity, having for its object the furtherance of the political campaign of this candidate by newspaper publication of the wrongs being committed in Plaquemines *20 Parish in support of the candidate's opponent.
We are of the opinion that the newspaper articles were properly admitted in evidence.
Appellant objected to the introduction in evidence of an uncertified photostatic copy of a letter from the State Board of Registration to the President of the Plaquemines Parish Police Jury advising him that Giordano had been removed as Registrar of Voters of the Parish. This copy was secondary evidence and should not have been admitted under the best evidence rule in the absence of any showing that the original (or of a certified copy of such public document) could not be produced. We may add however, that even if properly admitted the letter does not in our opinion prove Giordano's contention that his removal as Registrar of Voters was due solely or in any measurable way to the filing of the Tullier Federal suit against him.
Appellant contends that the allegedly libellous allegations contained in the Federal pleadings were privileged in that they were material, were made in good faith, without malice, and with probable cause, citing Lescale v. Joseph Schwartz Co., supra; Glisson v. Biggio, 141 La. 209, 74 So. 907; Gosserand v. Gumbel, 154 La. 537, 97 So. 852 and Waldo v. Morrison, 220 La. 1006, 58 So.2d 210, 32 A.L.R.2d 419.
We see no reason for a detailed discussion of the evidence adduced in this case. The District Judge said in his reasons for judgment:
"* * * The evidence in this case clearly shows that the accusations of gross misconduct made by the defendant against the plaintiff herein were untrue, libellous and made with malice and without probable cause.
"The accusations made by the defendant in his Federal Court proceedings were clearly untrue, as ruled by the Federal Court. As shown by the evidence adduced in both the Federal Court case and in the trial of this case, defendant was given every opportunity to register, and plaintiff was not guilty of any misconduct in failing to register the defendant herein or in attempting to disqualify or disfranchise persons whom he felt would vote contrary to his wishes, and further plaintiff gave all applications for registration the voter qualification test required by law without discrimination, contrary to the defendant's allegations. Undoubtedly, the accusations made by the defendant against plaintiff are libellous. It is self-evident that to accuse plaintiff-registrar of misconduct in office, particularly in the manner in which he was accused is libellous. If the defendant's charges were true the plaintiff would be guilty of the crime of malfeasance in office. LSA-R.S. 14:134."
We are in thorough accord with the above quoted findings of the District Judge.
As to malice, allegations made by Tullier in the Federal suit were libellous per se. Martin v. Markley, 202 La. 291, 11 So.2d 593. Proof of actual malice is not necessary if the words are actionable per se. Cadro v. Plaquemines Gazette, 202 La. 1, 11 So.2d 10; Cotonio v. Guglielmo, 176 La. 421, 146 So. 11.
The District Judge awarded damages to the plaintiff in the sum of $17,914.74, made up as follows: $9,771.12 for loss of wages, $643.62 for costs and expenses in the Federal Court and $7,500.00 for humiliation, embarrassment and damage to plaintiff's name and standing in the community.
The item for loss of wages was awarded because the District Judge found that plaintiff's removal as Registrar of Voters was due to defendant's action in filing the Federal Court suit. We cannot agree with this finding. The only proof that plaintiff offered on this score was his own personal opinion together with the photostatic copy of the letter from the Board of Registration which was admitted in evidence over objection. It is our opinion, even if this letter be considered, that plaintiff's proof was insufficient *21 on this point, and no damages should be allowed for alleged loss of wages.
The item of $643.62 for costs and expenses in the Federal Court should be allowed.
We think that in awarding $7,500.00 for humiliation, embarrassment and damage to plaintiff's name and standing, the District Court was prompted more by the nature of the offense than the damage suffered by plaintiff. While not being unmindful of the severity of the offense, we think damages should be compensatory rather than punitive. Plaintiff has shown no special damage here beyond the trouble and expense of the Federal suit and we think an award of $3,000.00 for this item is adequate under the circumstances of this case.
For the above reasons the judgment appealed from is amended by reducing the principal amount thereof to the sum of $3,643.62 and as so amended and in all other respects the judgment is affirmed.
Amended and affirmed.