198 So.2d 139 (1967)
Percy CORMIER, Plaintiff-Appellee,
v.
Gordon BLAKE and Catholic Mausoleum Association, Defendants-Appellants.
No. 1964.
Court of Appeal of Louisiana, Third Circuit.
April 26, 1967.
Rehearing Denied May 18, 1967.
*140 Dugas, Bertrand & Smith, by J. Nathan Stansbury, Lafayette, for defendants-appellants.
Simon, Trice & Mouton, by J. Minos Simon, Lafayette, for plaintiff-appellee.
Before TATE, SAVOY and HOOD, JJ.
HOOD, Judge.
This is an action for damages for defamation and malicious prosecution, instituted by Percy Cormier against Gordon Blake and Catholic Mausoleum Association. The defendants reconvened for damages, and plaintiff filed an exception of no right or cause of action to the reconventional demands. The exception was referred to the merits.
After trial, judgment was rendered by the trial court in favor of plaintiff and against defendant Blake for the sum of $3,000.00, and rejecting plaintiff's demands against the other defendant, Catholic Mausoleum Association. Judgment also was rendered maintaining the exception of no right or cause of action filed by plaintiff and dismissing the reconventional demands of defendants. Defendant Blake has appealed.
As a basis for his demands, plaintiff alleges: (1) That Blake, either individually or as agent for Catholic Mausoleum Association, willfully and maliciously signed an affidavit on March 13, 1964, charging plaintiff with the commission of a criminal offense, knowing that the affidavit was false, and that the signing of that affidavit caused plaintiff to be indicted by a grand jury and the return of the grand jury to be publicized in the local newspaper, all of which caused him great embarrassment, humiliation and injury although the criminal charge was later dismissed; and (2) that Blake slandered him on January 22, 1964, by making degrading, slanderous and insulting statements about him at a Parent-Teachers Association meeting.
Defendant Blake is the Executive Director of Catholic Mausoleum Association in Lafayette. During the latter part of the year 1963 he undertook to construct an addition to his home, and he employed plaintiff to work as a carpenter on that project. Cormier had been recommended for that employment by L. J. Aucoin, who was then superintendent of construction at the Mausoleum. Cormier accepted the employment by Blake with the understanding that after the repairs to the residence building had been completed Blake would consider employing him to work regularly for the Mausoleum Association.
Mrs. Blake was engaged in doing sculptural work at her home while Cormier was working there, and plaintiff offered to *141 loan her a metal mortar mix box, owned by him, for her to use in mixing the materials which she needed for her sculpture work. She accepted his offer, and the mortar box was delivered to Blake's home by Cormier during the first part of November, 1963. Mrs. Blake used the box for at least three or four weeks in connection with her sculpturing. Later during the month of November, Blake indicated to Cormier that he was interested in purchasing the mortar box from him. The two parties then discussed the matter, but at the trial they gave entirely different versions as to what was said in that discussion. Blake contends that he purchased the mortar box from Cormier at that time, while Cormier denies that the box was ever sold.
Cormier's employment by Blake was terminated on Saturday, December 7, 1963, and in gathering up his tools and equipment the following Monday Cormier picked up the mortar box and took it home with him. Blake then demanded that the box be returned, and Cormier refused. The dispute as to the ownership of this mortar box led to the occurrence of the two incidents which gave rise to this suit.
On December 18, 1963, Blake wrote a letter to Cormier advising him that if he did not return the mortar box criminal charges would be filed against him. The box was not returned and on December 23, 1963, an affidavit was signed by Blake reciting that on or about December 18, Cormier had willfully, unlawfully and intentionally taken and used a movable, the mortar mix box, belonging to Catholic Mausoleum Association, without the consent of the association, in violation of LSA-R.S. 14:68. This affidavit was turned over to the district attorney, and the matter was then presented to the grand jury. Blake testified before the grand jury, and on March 13, 1964, the grand jury returned a true bill formally accusing Cormier of the unauthorized use of a movable. The report of the grand jury, showing that such an indictment had been made against Cormier, was published on the front page of the March 15, 1964, issue of the Daily Advertiser, a newspaper published in the city of Lafayette, with a circulation of over 21,000. On April 27, 1964, the district attorney entered a nolle prosequi of the case.
In order to determine whether Blake acted maliciously in filing charges against plaintiff, it is necessary for us to consider the negotiations which took place between Cormier and Blake relative to the mortar box and to determine whether the box was or was not sold to either of the defendants prior to the filing of criminal charges against plaintiff.
Blake testified that early in November plaintiff asked him if he would like to buy the mortar box for $10.00, that he informed Cormier that the Mausoleum Association would like to purchase it, and that they entered into an agreement at that time to the effect that the association would buy the box for that price. He stated that several days later, on November 26, 1963, he signed and delivered to Cormier a check for $10.00, drawn on the corporation, representing payment for the box. The check has never been cashed, however, and it was not introduced in evidence. No bill of sale was drawn up or executed, and Blake did not obtain a receipt for the payment. Blake testified that he fired plaintiff on Saturday, December 7, 1963, and that on the following Monday, at plaintiff's request, he permitted Cormier to borrow the mortar box for a day or two, upon the promise that he would return it promptly at the expiration of that time. Blake stated that he contacted Cormier by telephone several times on and after December 11, requesting the return of the box, and finally plaintiff promised to return it if Blake would give him a letter of recommendation. Blake wrote the letter of recommendation on December 13, and sent it to plaintiff, but the latter then informed him that he did not intend to return the box and that he had destroyed the check which had been given to him in order that there would be *142 no evidence of a sale. Blake stated that he then consulted the district attorney and another attorney, and thereafter he wrote a letter to plaintiff on December 18, 1963, informing him that criminal charges would be filed against him if he did not return the box. The box was not returned, and Blake thereupon executed the above mentioned affidavit on December 23.
Blake's testimony is supported in many respects by that of his wife, who stated that she was present when an agreement was entered into between Blake and Cormier for the sale of the box early in November, and that she also was present when Blake delivered the check for $10.00 to Cormier on November 26. Lucy Francis, who was then an employee of Blake's, also testified that she heard the parties agree on a sale of the box for $10.00, but she did not witness the delivery of the check.
The defendants introduced in evidence some check stubs of the Mausoleum Association, one of which contains notations indicating that a check was issued to Percy Cormier on November 26, 1963, for "Buying of and use of concrete trough." The notation on this stub appeared to be somewhat irregular, when compared to notations on other check stubs. Blake explained, however, that the notation on this stub originally read "Use of concrete trough," but that such a notation was incorrect, so a few minutes after it was made he had his secretary insert the additional words "Buying of and" on the stub. As we have already mentioned, the check itself was never produced and it is not in this record.
Cormier testified that about a week or two before he terminated his employment by Blake, the latter asked him if he could buy the mortar box, and Cormier replied that he would sell it if Blake would give him a regular job at the Mausoleum. He stated that he received no such promise from Blake at that time, and on December 7, 1963, he informed Blake that he would have to know then whether he would be given permanent employment by the association after the work on Blake's home was completed. Cormier testified that Blake refused to give him such a commitment, so he quit his job voluntarily on that day. He returned to Blake's residence on the following Monday, at which time he gathered up his tools and equipment, including the mortar box, and returned them to his own home. He stated that he did not sell or agree to sell the mortar box at any time, that he never received a check or any other payment from Blake or the Mausoleum Association for anything other than for wages, that he never destroyed a check that was issued to him, and that there was no discussion between him and Blake relative to the borrowing of the box by Cormier after he resigned his employment.
The record contains a true copy of the affidavit which was signed by Blake, a copy of the indictment returned by the grand jury against plaintiff, and a copy of the minutes of the court showing that a nolle prosequi of the case was entered on April 27, 1964, on motion of the district attorney. Blake apparently was the only witness who testified before the grand jury and a true bill was returned on the evidence which he presented. Blake stated that a week or two after the indictment was returned, he asked the district attorney to drop the charge because it was "too small a matter" and it "became a petty thing." He also testified that he filed the charge against Cormier because he "was very irritated" and felt that he "had been taken advantage of," and because he wanted "to get the box" and to "punish" Cormier for what he had done.
The trial judge rejected the testimony of Blake and accepted that of Cormier. He also held that Blake's actions in filing the criminal charge could not be attributed to the Mausoleum Association, since there was no evidence in the record to show that Blake was granted authority by the corporation to file such charges against Cormier.
*143 The trial judge's findings of fact, particularly those involving the credibility of witnesses testifying before him, are entitled to great weight on appeal, and will not be disturbed unless found to be clearly erroneous. Martin v. LeBlanc, 157 So.2d 283 (La.App.3d Cir. 1963); and Lamartiniere v. Daigrepont, 168 So.2d 370 (La.App.3d Cir. 1964).
We cannot say that the trial judge erred in accepting the testimony of Cormier and rejecting that of Blake in this instance. We conclude, therefore, that plaintiff did not sell the mortar box to either of the defendants, that Cormier was the owner of that box at the time criminal charges were filed against him by Blake, and that Blake knew or should have known at the time those charges were filed that the mortar box was owned by Cormier.
In an action to recover damages for malicious prosecution of a criminal or civil proceeding, the plaintiff must prove: (1) Termination of the proceeding in favor of the plaintiff; (2) lack of probable cause; and (3) malice on the part of the defendant. Scott v. Citizens' Hardware & Furniture Company, 180 La. 473, 156 So. 469; Cox v. Cashio, 96 So.2d 872 (La.App. 1st Cir. 1957); 54 C.J.S. Malicious Prosecution § 1, p. 951.
In the instant suit the criminal charge filed against Cormier was dismissed by the district attorney, so it must be said to have terminated in favor of the plaintiff.
Whether or not a litigant has probable cause for making a false and injurious statement in any case depends upon the particular facts of that case. Our Supreme Court has held that the question of whether the defendant had probable cause for making such a statement "does not depend merely upon the actual state of the case, but upon his honest belief in making said averments." Gosserand v. Gumbel, 154 La. 537, 97 So. 852 (1923); and Waldo v. Morrison, 220 La. 1006, 58 So.2d 210, 32 A.L.R.2d 419 (1952). In the instant suit we have concluded that the mortar box was owned by Cormier when the criminal charges were filed against him, when the offense allegedly was committed and when a true bill was returned by the grand jury. We have also found that Blake was aware, or should have been aware, of the fact that plaintiff still owned the mortar box at those times. It is obvious, therefore, that the statements contained in the affidavit which he executed were not made in good faith, and that Blake did not have reasonable grounds for believing the truth of those statements. Blake should have known that there was little or no probability that the charge could be supported by the evidence, and thus we find that there was a lack of probable cause for filing such a charge.
The third, and last, element of proof which is required for the recovery of damages for malicious prosecution is that there be malice on the part of the defendant. A false and injurious statement will be held to have been made with malice if it was made "with knowledge that it was false or with a reckless disregard as to whether it was false or not." Matassa v. Bel, 246 La. 294, 164 So.2d 332 (1964); New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).
We have already concluded that the statement made by Blake in the affidavit to the effect that the mortar box was owned by Catholic Mausoleum Association was false, and that Blake signed it with at least a reckless disregard as to whether it was false or not. Blake acknowledges that one of the reasons why he filed the charge was to "punish" Cormier. We think the evidence shows that Blake signed the injurious affidavit and filed the criminal charge against Cormier with malice. All of the elements of proof required for establishing liability for a malicious prosecution, therefore, have been met.
*144 Defendant Blake contends, however, that the subsequent publication of the report of the grand jury in the Lafayette newspaper should not be attributed to him. We find no merit to that contention. Although the general rule is that the original author of a libelous publication will not be held to be liable for the republication or repetition thereof by others, an exception to this rule exists where the publication is a natural and probable consequence of defendant's act. Giordano v. Tullier, 139 So. 2d 15, 96 A.L.R.2d 365 (La.App.4th Cir. 1962); 53 C.J.S. Libel and Slander § 85, p. 137; 33 Am.Jur., Libel and Slander, Sec. 197, p. 185.
In our opinion the publication of the report of the grand jury on the front page of the Daily Advertiser was a natural and probable consequence of Blake's act in filing the criminal charge against Cormier.
The defendant also argues that the statements contained in the affidavit which he executed charging Cormier with the unauthorized use of a movable were made to the district attorney in connection with the prosecution of a criminal charge, and that such a statement carries with it a qualiifed privilege under our law. We agree that on grounds of public policy the law recognizes certain communications as being privileged and, as such, they may not serve as the basis for imposing liability for defamation. In Toomer v. Breaux, 146 So.2d 723 (La. App.3d Cir. 1962), we held that:
"* * * a publication enjoys a `qualified' or conditional privilege, applicable if the communication is made (a) in good faith, (b) on any subject matter in which the person communicating has an interest or in reference to which he has a duty, (c) to a person having a corresponding interest or duty. This privilege arises from the social necessity of permitting full and unrestricted communication concerning a matter in which the parties have an interest or duty, without inhibiting free communication in such instances by the fear that the communicating party will be held liable in damages if the good faith communication later turns out to be inaccurate."
As noted in that case, one of the requirements which must be met before a publication is entitled to such a qualified or conditional privilege is that it be made in good faith. This means that the person making the statement must have reasonable grounds for believing that it is true and he must honestly believe that it is a correct statement. A statement is not made in good faith if there is not just or probable cause to believe it is true, or if the person making it does not have reasonable grounds for believing that it is true and he is actuated by malice and ill will. Waldo v. Morrison, supra.
For the reasons which we have already pointed out, we find that the statements which were made by Blake in filing a criminal charge against Cormier were not made in good faith, and thus defendant cannot avoid liability for damages on the ground that he is entitled to a qualified privilege.
We concur in the finding of the trial court that plaintiff is entitled to recover from Blake the damages which he sustained as a result of this malicious prosecution. We also agree that Blake was not acting as an agent of the corporation when this charge was filed, and that the Catholic Mausoleum Association is not liable in damages for Blake's acts.
The trial judge also concluded that defendant Blake had made slanderous statements about Cormier at a Parent-Teachers Association meeting which was held on January 22, 1964. We consider it unnecessary, however, to determine whether a slander was committed on that date, because in our opinion the evidence establishing liability on the grounds of malicious prosecution is sufficient to support the judgment which was rendered.
*145 This brings us to a consideration of the question of whether the award is excessive, as contended by the appellant. Defendant points out that plaintiff did not seek damages for loss of wages, but only for humiliation, embarrassment and damage to his reputation or standing in the community. He contends that the award of $3000.00 made by the trial court is excessive.
We have considered the awards made in other cases of this nature and have concluded that the amount awarded here is within the range of the discretion which is vested in the trial court. See Deshotel v. Thistlethwaite, 240 La. 12, 121 So.2d 222 (1960); Giordano v. Tullier, supra; Oakes v. Alexander, 135 So.2d 513 (La.App.2d Cir. 1961); Kennedy v. Item Co., 213 La. 347, 34 So.2d 886 (1948); Madison v. Bolton, 234 La. 997, 102 So.2d 433 (1958).
For the reasons herein set out the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed.