Eugene C. DAVIS, Plaintiff

v.

**NATIONAL BROADCASTING COM-
PANY, Defendant.**

Civ. A. No. 68–1513.

United States District Court,
E. D. Louisiana,
New Orleans Division.

Dec. 17, 1970.

John H. Brooks, New Orleans, La., for plaintiff.

Cicero C. Sessions, Robert E. Winn, New Orleans, La., for defendant.

RUBIN, District Judge:

Old grievances, like old soldiers, do not die. On August 12, 1968, Eugene C. Davis sued National Broadcasting Company for defamation allegedly committed in 1967. The claim smoldered until this Court prodded the ashes. Then it blazed up in motions and counter motions. The issues now before the Court are raised by the defendant's motion for summary judgment.

The legal questions presented by the motion are basically simple: they concern the application of the Louisiana prescriptive statute and the scope of the privilege recognized in N. Y. Times Co. v. Sullivan [376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686]. The case arises from the events set in motion when the District Attorney of Orleans Parish charged Clay Shaw with conspiracy to assassinate President Kennedy.

After Shaw was indicted, Dean Andrews, a New Orleans lawyer, made public statements that the day after President Kennedy was assassinated, one Clay Bertrand telephoned him and asked him to defend the assassin, Lee Harvey Oswald. But no one by the name of Clay Bertrand could be found. There was speculation that this was a pseudonym used by Clay Shaw. These events, like everything else connected with the Shaw trial, attracted great public interest. Newspapers, radio, television and magazines catered to this interest with widespread coverage of every related occurrence.

Mr. Andrews himself by virtue of his picaresque speech and willingness to be interviewed attracted considerable attention. The NBC Huntley-Brinkley report of June 28, 1967 included a statement by Andrews, in a colloquy with NBC reporter Walter Sheridan, that Eugene C. Davis was Clay Bertrand. This statement was of public interest because, if true, it meant that there was a real person who had used the pseudonym, and that this person was not Clay Shaw.

## I. PRESCRIPTION

Davis contends Andrews' report was false and defamatory. But he didn't file suit until more than one year after the date of the broadcast, and the prescriptive period for actions for defamation in Louisiana, like that for other torts, is one year. Article 3536, Civil Code.

To avoid being barred, Andrews contends that a newspaper article published in the New Orleans States-Item on August 11, 1967, was a republication of NBC's defamation, and that this republication was a natural and probable consequence of the NBC broadcast on June 28. For good measure, it is alleged that the newspaper story was also a republication of a statment by NBC news reporter Frank McGee and June 19, 1967, that:

> Clay or Clem Bertrand does exist. * * * It is a pseudonym used by a homosexual in New Orleans. For his own protection, we will not disclose the real name of the man Andrews knew as Clem Bertrand. * * * He is not Clay Shaw.

The fact that plaintiff was neither named nor otherwise identified, directly or obliquely, in the June 19th broadcast,

does not appear to trouble the logic of this argument in any way.

The only words in the newspaper article that are suggested to constitute a republication of NBC's broadcasts are these:

> Eugene Davis, a French Quarter Bar owner who Andrews now says is the mysterious Clay Bertrand who called him the day after President Kennedy was shot seeking a defender for Lee Harvey Oswald, appeared at court today. He was called as a witness in the perjury trial. Davis told newsmen his attorney, G. Wray Gill, will file a suit today "against a broadcasting media" because of treatment Davis has received in newspaper reports.

■ Every publication of a libel is a separate tort for which an independent action may be maintained, Harper and James, The Law of Torts, 5.18, and for which a new prescriptive period runs. Since August 11, 1968 was a Sunday, Davis is not barred by prescription from suing those responsible for the States-Item report. If, however, the defendant's lack of responsibility for the newspaper article is established beyond dispute, summary judgment is proper.

■ The general rule is that one who publishes a defamatory statement will not be held liable for the repetition of it by others. 53 C.J.S. Libel and Slander § 85. When, however, the second publication is a natural and probable consequence of the first, the initial publisher is responsible for it. Giordano v. Tullier, 139 So.2d 15 (La.App. 4 Cir. 1962); Cormier v. Blake, 198 So.2d 139 (La.App. 3 Cir. 1967). Whether this has occurred is a question of fact. See, Annotation, Defamation—Republication by Others, 96 A.L.R.2d 373. Where there were circumstances, known to the original defamer at the time of his publication that might reasonably lead him to expect a repetition, he is responsible for it. Annotation, supra, § 3. The nature of this factual issue indicates that sum-

mary judgment is infrequently appropriate. But here NBC's lack of responsibility for what was published in the newspaper six weeks later is substantiated beyond the possibility of genuine dispute.

■ There is no contention that NBC exercises control over the States-Item. Further, the article in issue contains only an oblique reference to the defendant. The article primarily recounted events at Dean Andrews perjury trial, an independently newsworthy event. It was no mere repetition of the earlier television interview. Compare Giordano v. Tullier, *supra*, and Cormier v. Blake, *supra*. (The newspaper account neither quotes from nor purports to be derived from either NBC broadcast.) In essence the plaintiff has shown only that two independent media reported the newsworthy remarks of a private individual. The mere coincidence of news reporting by independent news services does not make one medium legally responsible for the publications of the other.

Even if prescription were the sole basis for the defendant's summary judgment motion, the motion should be granted. However, NBC also asserts a more fundamental defense under the First Amendment, and, because it likewise has merit, it will stand as the primary basis for granting the motion.

## II. FIRST AMENDMENT

■ In the last six years, the New York Times privilege has become the cornerstone for libel defense. In the Fifth Circuit, the publication of information of public interest is immunized from damages for defamation unless there is proof that it was committed with knowledge of its falsity or with serious doubt about its truth.

In two recent cases, this circuit has made clear that the scope of the privilege includes the publication of all material within the public interest. In Bon Air Hotel, Inc. v. Time, 5 Cir. 1970, 426 F.2d

858, the Court re-affirmed the position taken in Time, Inc. v. McLaney, 5 Cir. 1969, 406 F.2d 565 and held that "publications concerning matters of public interest are protected by the first amendment absent proof of actual malice." See, also, Wasserman v. Time, Inc., D.C.Cir. 1970, 424 F.2d 920; Rosenbloom v. Metromedia, Inc., 3 Cir. 1969, 415 F.2d 892; United Medical Laboratories v. C.B.S., 9 Cir. 1968, 404 F.2d 706, cert. den., 394 U.S. 921, 89 S.Ct. 1197, 22 L.Ed.2d 454.

■ The activities of Davis, unlike those of McLaney and Bon Air, were not of public concern. He was caught in the storm of publicity that resulted from the Shaw trial and from Andrews' statements about him. But the Fifth Circuit opinions militate against use of this distinction and suggest that the NBC broadcast is protected by the *Times* doctrine. A person may become the subject of public interest within the meaning of that rule, although he does not seek to be one, and indeed attempts to avoid it. Thus, a person called to testify unwillingly before a grand jury, a bystander at an event of public importance, or the family of a public official may well be public figures exposed to public comment that is protected by the privilege.

Hence, as expounded by the decision in *Bon Air*, the Fifth Circuit rule is that a publication about any matter of public interest is within the scope of the *Times* privilege, and hence protected, absent a showing that the publisher knew that the statement was false or had serious doubt about its accuracy. In the light of that privilege, this court must consider whether there are any material issues of fact to be tried in this case.

■ The decision on a motion for summary judgment requires an uneasy choice between the opponent's right to a jury's determination of his case and the interest of the proponent in the avoidance of trials that serve no useful purpose. In libel cases, where the defendant has moved under Rule 56, the Fifth Circuit has indicated that the trial court must view the record in the light most favorable to the plaintiff and determine whether there is any issue of fact from which a jury could find actual malice. Time, Inc. v. McLaney, *supra*; Bon Air Hotel v. Time, Inc., *supra*; Blanke v. Time, Inc., E.D.La.1970, 308 F.Supp. 378.

■ The defendant has discharged his heavy burden here. There is not a suggestion of a scrap of evidence that anyone in NBC's organization knew the broadcasts about Davis to be untrue, or had any reason to doubt what Andrews said. N. Y. Times v. Sullivan indicates that NBC is not responsible for the state of mind of Dean Andrews. Despite the mass of papers filed in this case, and ample opportunities to provide factual data, plaintiff has provided no factual support by affidavit, deposition, or in any other manner that would support a jury's decision that the relationship between Andrews and NBC was such that the latter would be responsible for his acts. Nor is there any indication that NBC is liable because it used Mr. Andrews as a source of information in its documentary. In fact, it appears that Davis' sole contention is that since NBC aired the libel it is "responsible" for it. Responsible it may be, but it is not liable unless it had actual malice or serious doubt.

The plaintiff's right to his day before the jury is not to be cavalierly avoided. But "the failure to dismiss a libel suit might necessitate long and expensive trial proceedings which, if not really warranted, would themselves offend the principles enunciated in Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L. Ed.2d 22, * * * because of the chilling effect of such litigation." Time, Inc. v. McLaney, *supra*, 406 F.2d at 566; Bon Air Hotel v. Time, *supra*.

See Wasserman v. Time, Inc., *supra*, 424 F.2d at 922–923 (Wright, concurring opinion).[1]

For these reasons, the motion for Summary Judgment is granted.

## WARNER–LAMBERT PHARMACEUTICAL CO.

### v.

### William SYLK.

### Civ. A. No. 69–2730.

United States District Court, E. D. Pennsylvania.

Dec. 31, 1970.

[1.] Judge Wright there stated:

In my judgment New York Times Co. v. Sullivan makes actual malice a constitutional issue to be decided in the first instance by the trial judge applying the *Times* test of actual knowledge or reckless disregard of the truth. Cf. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Unless the court finds, on the basis of pretrial affidavits, depositions or other documentary evidence, that the plaintiff can prove actual malice in the *Times* sense, it should grant summary judgment for the defendant. Washington Post Co. v. Keogh, 125 U.S.App.D.C. 32, 365 F.2d 965, 20 A.L.R.3d 972 (1966), cert. denied, 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967). Compare Goldwater v. Ginzburg, 2 Cir., 414 F.2d 324, 336–337 (1969), cert. denied, 396 U.S. 1049, 90 S.Ct. 701, 24 L.Ed.2d 695 (1970).

If the case survives the defendant's summary judgment motion, the trial court at the close of the plaintiff's case must decide whether actual malice has been shown with "convincing clarity." In making this judgment the court will judge the credibility of the witnesses and draw its own inferences from the evidence. If the trial is permitted to proceed, the court will be called upon again to make a judgment on the actual malice issue at the close of all of the evidence. If the motion for a directed verdict at this stage of the trial is denied, the actual malice issue, along with the other issues, is then submitted to the jury under the *Times* instruction without any indication from the court or counsel that the court has decided that the evidence shows actual malice with "convincing clarity."

This two-step procedure in which both the trial judge and the jury must find actual malice before there can be judgment for the plaintiff provides the protection of the First Amendment freedom that *Times* sought to make secure in areas of public concern. As the Court stated in Rosenblatt v. Baer [383 U.S. 75, 86 S.Ct. 669, 15 L.Ed. 2d 597] in support of its requirement that the trial judge in the first instance determine whether the evidence shows the plaintiff in a libel suit to be a public official: "Such a course will

Robert P. Herzog, New York City, for plaintiff.

Michael H. Egnal, Philadelphia, Pa., for defendant.

both lessen the possibility that a jury will use the cloak of a general verdict to punish unpopular ideas or speakers, and assure an appellate court the record and findings required for review of constitutional decisions. Cf. Speiser v. Randall, 357 U.S. 513, 525, 78 S.Ct. 1332, 1341, 2 L.Ed.2d 1460; *New York Times*, 376 U.S., at 285 [84 S.Ct. 710]." 383 U.S. at 88 n. 15, 86 S.Ct. at 677.

