508 So.2d 949 (1987)
Christine Shaw OWENS
v.
NATIONAL BROADCASTING COMPANY, et al.
No. CA-6994.
Court of Appeal of Louisiana, Fourth Circuit.
June 3, 1987.
*950 Harry T. Widmann, New Orleans, for appellant.
Curtis R. Boisfontaine, Kathryn J. Lichtenberg.of Sessions, Fishman, Rosenson,
Boisfontaine, Nathan & Winn, New Orleans, for appellees.
Before CIACCIO, WARD and WILLIAMS, JJ.
CIACCIO, Judge.
In this defamation suit, plaintiff appeals a summary judgment granted in favor of defendants. We affirm.
Of primary importance in this case is whether plaintiff is a "public person." If she is, to avoid summary dismissal of her petition she must show that she can prove "actual malice" as that requirement is defined in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). See: Schaefer v. Lynch, 406 So.2d 185 (La.1981); Wattigny v. Lambert, 453 So.2d 1272 (La.App. 3d Cir.1984); Rochon v. Wolter, 427 So.2d 495 (La.App. 4th Cir. 1983); Batson v. Time, Inc., 298 So.2d 100 (La.App. 1st Cir.1974). The New York Times case articulated the constitutional privilege to defamatory criticism of "public officials", which privilege the court extended to encompass "public figures" in Curtis Publishing Co. v. Butts and its companion case, Associated Press v. Walker, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967).
In well-stated reasons for judgment the trial court assessed the case before him as follows:
This lawsuit arises out of a statement that an NBC news correspondent Craddock M. Gilmourmade on July 13,1983, while filming a report for the "NBC Nightly News" concerning the closing of Al Hirt's night club in the French Quarter.
During the news segment that appeared on national news Mr. Gilmour made the statement that the plaintiff was a "stripper-turned-singer."
The plaintiff has filed a defamation suit against the defendants on the basis that that statement was defamatory because she has never been a stripper.
The defendants now move for summary judgment on the basis that the plaintiff is a public figure within the ambit of the doctrine enunciated by the U.S. Supreme *951 Court in New York Times v. Sullivan, 376 US 254 [84 S.Ct. 710, 11 L.Ed.2d 686] (1964) and that therefore the plaintiff must show actual malice, i.e., the plaintiff must show that the statement was made with the knowledge that the statement was false or with reckless disregard as to whether the statement was false or not.
The plaintiff opposes the summary judgment on the basis that the plaintiff is not a public figure and therefore the plaintiff does not have to show actual malice as to the defendants.
The threshold issue to be decided is whether or not the plaintiff is a public figure and thereby entitling the defendant to the privilege recognized in the "New York Times" case.
There is no litmus paper test to determine whether or not a person is a public figure. However, the memorandum on behalf of the defendants cites cases showing that public figure status has been accorded to a night club belly dancer, an amateur speed skater, a model and singer, a former basketball coach, a former football player and a Playboy bunny. (Citations are ommitted-see defendants' memorandum at pages 4-6).
The Louisiana Supreme Court has even granted public figure status to a deputy sheriff (See St. Amant v. Thompson [250 La. 405], 196 So.2d [255,] 261 [(1967)] and this court has followed that in applying it to a sergeant on the New Orleans Police Force (See "Orticke v. Times Picayune Publishing Corporation and Iris Kelso", CDC number 81-7527).
Accordingly, this Court concludes that the plaintiff is a public figure within the guidelines set forth in the "New York Times" case as well as the Gertz v. Welch decision at 418 US 323 [94 S.Ct. 2997, 41 L.Ed.2d 789] (1974).
Judge Rubin in Davis v. NBC, 320 F.Supp. 1070 USDC, E.D. Louisiana 1970 (at page 1073) stated that:
"The decision on a motion for summary judgment requires an uneasy choice between the opponent's right to a jury's determination of his case and the interest of the proponent in the avoidance of trials that serve no useful purpose ... The plaintiff's right to his day before the jury is not to be cavalierly avoided. But the failure to dismiss a libel suit might necessitate long and expensive trial proceedings which, if not really warranted would themselves offend the principles enunciated in Dombrowski because of the chilling effect of such litigation."
As Judge Wright noted in his concurring opinion in Wasserman v. Time, 424 F 2d [920] at 922-923 [(C.A.D.C.1970)]:
"In my judgment "New York Times" makes actual malice a constitutional issue to be decided in the first instance by the trial judge applying the Times test of actual knowledge or reckless disregard of the truth ... unless the Court finds, on the basis of pre-trial affidavits, depositions or other documentary evidence, that the plaintiff can prove actual malice, it should grant summary judgment for the defendant..."
This Court therefore concludes that the plaintiff has not met the burden on motion for summary judgment by showing that there is actual malice under the "New York Times" rule.
Accordingly, a motion for summary judgment is granted to the defendants.
Plaintiff contends that she is not a "public figure." She argues that although she may have attained local, even regional, fame and notoriety, she is not a national public figure. And since the alleged defamatory statement was made during a national, even international, broadcast, she cannot be considered a "public figure" for purposes of that broadcast.
While the geographical range of an individual's fame or notoriety may be relevant in an initial determination of his "public person" status, we do not interpret the jurisprudence as placing geographical boundaries upon the New York Times constitutional privilege. Plaintiff would have us fashion a rule which would extend the privilege to the local media but withhold it from any media with a geographically *952 broader audience. Under plaintiff's proposal, if a city print publication, radio station or television station had published or broadcast the complained of remark, these local media would be constitutionally privileged to make the remark absent "actual malice." But, if a publisher or broadcaster with wider geographical circulation or coverage were to pick up the story and run it through their farther-reaching media, they would be at peril for loss of the constitutional privilege.
The jurisprudence makes clear that in these types of cases the goal is to balance the constitutional rights of free speech and freedom of the press against society's interest in protecting the good name and reputation of the individual. On the side of constitutionally guaranteed rights the United States Supreme Court has stated:
Although the erroneous statement of fact is not worthy of constitutional protection, it is nevertheless inevitable in free debate. As James Madison pointed out in the Report on the Virginia Resolutions of 1798: "Some degree of abuse is inseparable from the proper use of every thing; and in no instance is this more true than in that of the press." 4 J. Elliot, Debates on the Federal Constitution of 1787, p. 571 (1876). And punishment of error runs the risk of inducing a cautious and restrictive exercise of the constitutionally guaranteed freedoms of speech and press. Our decisions recognize that a rule of strict liability that compels a publisher or broadcaster to guarantee the accuracy of his factual assertions may lead to intolerable self-censorship. Allowing the media to avoid liability only by proving the truth of all injurious statements does not accord adequate protection to First Amendment liberties. As the Court stated in New York Times Co. v. Sullivan, supra, 376 U.S., at 279, 84 S.Ct., at 725: "Allowance of the defense of truth, with the burden of proving it on the defendant, does not mean that only false speech will be deterred." The First Amendment requires that we protect some falsehood in order to protect speech that matters.
Gertz v. Robert Welch, Inc., 418 U.S. 323, 340-341, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974).
We do not believe that the constitutional freedoms of speech and press were ever intended to be geographically bound. Requiring pre-utterance determination of the geographical boundaries within which a statement may be made under the New York Times privilege would undoubtedly lead to "intolerable self-censorship." We, therefore, reject plaintiff's argument that the national defendants cannot invoke the New York Times privilege because she is a local public figure but not a national public figure.
On the side of protecting private individuals from being thrust into the public eye by the distorting light of defamation, see Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), Mr. Justice Marshall dissenting at p. 79, 91 S.Ct. at p. 1837, the Court has stated and held that
a publisher or broadcaster of defamatory error which a court deems unrelated to an issue of public or general interest may be held liable in damages even if it took every reasonable precaution to assure the accuracy of its assertions.
* * * * * *
so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual.
Gertz. supra, at 346-347, 94 S.Ct. at 3010. As we noted above, however, "public figures", particularly those who voluntarily attract public attention, inviting public comment, are not afforded as much protection. Comments regarding "public figures" are afforded the New York Times constitutional privilege. Curtis Publishing Co. v. Butts, supra. Those who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures. Gertz, supra, at 342, 94 S.Ct. at 3008.
*953 As to plaintiff's status as a "public person", without regard to geography, she has sought unquestionably to attract public attention and interest, and thereby invited public comment. She is an entertainer who owns the nightclub where she regularly performs as the star attraction. She has advertised her performances approximately 200 times a year in local print media. Her advertisement proclaims: THE MOST ELECTRIFYING ONE WOMAN SHOW ON THE ENTERTAINMENT SCENE. SUPER STAR * OF STAGE, SCREEN, T.V., RADIO & RECORDINGS. In her answers to interrogatories she lists a dozen locations where she has performed locally, four different recording studios she has used (2 in New Orleans, 1 in Bogalusa, 1 in Los Angeles), over seventeen local and national television appearances, and numerous appearances for trade shows, fund raisers, benefits, charities, business openings, et cetera. We find no unresolved material issue regarding plaintiff's status as a "public person." The trial court concluded correctly that the evidence properly considered on the motion for summary judgment conclusively established that plaintiff is a "public person."
The remaining issue is whether plaintiff carried her burden to show an ability to prove defendants'"actual malice" in making or broadcasting the alleged defamatory remark. Plaintiff is entitled to have all the evidence, depositions, affidavits and inferences reasonably drawn from them, viewed in the light most favorable to her in determining the existence of a genuine issue of material fact. Batson v. Time, Inc., supra, at 108. We have thusly viewed the affidavits, depositions, answers to interrogatories, the video tape of the initial broadcast, the following night's broadcast correction, and N.B.C. correspondent Douglas Kiker's interview with plaintiff, and the entire record. No evidence suggests defendants knew the remark was false. As to reckless disregard for truth or falsity,
reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice."
St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968). In Garrison v. State of Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964), the opinion emphasized the necessity for a showing that a false publication was made with a "high degree of awareness of * * * probable falsity." 379 U.S. at 74, 85 S.Ct. at 215. See also Gertz v. Robert Welch, Inc., supra. The evidence does not suggest defendants' reckless disregard for truth or falsity. We concur with the trial judge that plaintiff did not carry her burden to demonstrate an ability to prove "actual malice."
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.