SCHOTT, Judge.
This is a defamation suit against A1 Franklin, Hillary Simoneaux, and their employer Professional Engineering Services, Inc. (Professional) and George Ross, Martin Zimmerman and their employer, Amoco. Plaintiff alleged in his petition that the defendants made statements that he engaged in rowdy and unruly behavior at a golf tournament and that he exacted sexual favors from suppliers in exchange for awarding contracts with his employer, Amoco. Ross, Zimmerman, and Amoco (sometimes “appellees”) pleaded the affirmative defense that the alleged defamatory statements were privileged because they were made in the course of an investigation by Amoco supervisory personnel of charges of misconduct on plaintiff’s part. Appellees moved for summary judgment based upon the pleadings and on some excerpts from the depositions of plaintiff, ap-pellees, and others. The trial court granted the summary judgment, and plaintiff has appealed contending that there are genuine issues of material fact.
Undisputed are these facts: In October, 1982 plaintiff, an engineer employed by Amoco, attended a golf tournament sponsored by Apex, an oilfield service company. Also in attendance were Franklin and Simo-neaux, employees of Professional, which was likewise a supplier of oilfield services. Following this event Franklin called Zimmerman, Amoco's Regional Engineering Manager, and asked if his company could do some work for Amoco. Franklin and Zimmerman are married to sisters. Zimmerman told Franklin he should contact plaintiff in order to get a contract. At this *441 point there is a dispute about what was said, but, following the conversation, Zimmerman launched an internal investigation of charges that plaintiff misbehaved at the golf tournament and that he was exacting sexual favors for contracts he awarded. The alleged defamation occurred when these statements were exchanged and repeated by various Amoco supervisors in the chain of command from plaintiff up to the Regional Production Manager. Also undisputed were the facts that plaintiff was exonerated of these charges, but he was ultimately discharged in April, 1983 for misconduct unrelated to the charges.
In the situation where a supervisor undertakes an investigation of employee misconduct he may enjoy a qualified or conditional privilege in making a statement if it is made (1) in good faith, (2) on a subject in which the person communicating has an interest or owes a duty, and (3) to a person having a corresponding interest or duty. O’Dell v. Deich, 496 So.2d 1074 (La.App. 4th Cir.1986).
Plaintiff contends that there are genuine issues of material fact on the question of Zimmerman’s good faith which precluded summary judgment in his favor. In the O’Dell case the court, citing Cormier v. Blake, 198 So.2d 139 (La.App. 3rd Cir.1967), stated:
“[good faith] means that the person making the statement must have reasonable grounds for believing that it is true and he must honestly believe that it is a correct statement.”
Zimmerman’s position is that Franklin told him about plaintiff’s misconduct furnishing a reasonable basis for him to pass the statements around during the course of the investigation. The problem is that there is a direct conflict between Zimmerman’s and Franklin’s testimony on what Franklin said. Zimmerman testified as follows:
Q. Do you have any idea why this letter addresses itself to not only allegations of rowdy and unruly conduct at a golf party, but to the requiring of the payment of sexual favors in order to get work from Amoco?
A. There was discussion around that subject during my conversation with Mr. Franklin.
Q. Did Mr. Franklin indicate to you that Mr. Flanagan and Mr. Irwin were requiring sexual favors in order to get work from Amoco?
A. No.
Q. When you say there were discussions around that subject, would you please explain to me, then?
A. I don't remember the exact words, but the context of the conversation was it appears that to do business with Amoco with these type of guys, you need to buy them a piece of ass and show them a good time. That’s the kind of—
Q. General context of what Mr. Franklin said to you?
A. Yes. There was no allegation that had actually occurred — maybe a characterization.
Q. So these general context or. implications about favors in order to get work that were reported to you by Mr. Franklin, you passed that on to Mr. Poole and Mr. Eady also along with the information about the golf tournament?
A. The conversation that I had with Mr. Franklin, the pertinent points that I felt the fact that a golf tournament where it was a single member sponsored and where cash prizes were awarded and the characterizations of less than professional behavior, were passed on to Mr. Poole to Mr. Eady.
On the other hand, Franklin gave the following testimony:
Q. Okay. Do you recall telling Mr. Zimmerman that Mr. Flanagan and Mr.— just lost the man’s name, Mr. Irwin were boisterous and rowdy and had had too much to drink at the Apex golf tournament?
A. Martin asked me about the behavior of Mr. Irwin and Mr. Flanagan, how they behaved at the tournament and I told him that I had seen Richard, that he seemed like he was in good shape, *442 enjoying himself. I said I did not see Henry Flanagan and I said, but Chuck Simoneaux who was our salesman, had stayed through the dinner and so on and he had commented that Henry was feeling no pain and had gotten into some arm wrestling contests and was betting people money on the outcome of the contests and was a consistent loser in the contest.
Q. Do you recall telling Mr. Zimmerman that it appeared the only way you could get a job out of the group with Amoco that Mr. Flanagan and Mr. Irwin were working in was to buy them a piece of ass and show them a good time?
A. No, I did not.
Q. If Mr. Zimmerman had testified in a deposition that that was the general content or the general characteristic of one of your comments, would that be incorrect?
A. The only thing that came up about him was that Chuck Simoneaux has told me that the girls that they had driving the carts around serving drinks were....
This was the extent of the excerpt presented to the trial court.
If Franklin didn’t tell Zimmerman about plaintiffs alleged contracts-for-sex policy then Zimmerman was mistaken, or worse, when he reported this policy to others. On the other hand if Franklin did tell him about it, Zimmerman had reasonable grounds to believe it and was in good faith in making the statements. What Franklin told Zimmerman is a genuine issue of material fact unresolved in the deposition excerpts and crucial to appellees’ affirmative defense.
We also note that the summary judgment exonerating Zimmerman leaves plaintiff in a truly anomolous position. If he goes to trial against the remaining defendants, Franklin and Simmoneaux, and the jury believes Franklin’s statement that he didn’t tell Zimmerman about plaintiff's misbehavior, his suit against Franklin will be gone and his case against Zimmerman based upon the truth of Franklin’s statement is no longer viable. The case will be in a better posture for a just result if both Franklin and Zimmerman remain as defendants [parties] and the trial court can decide who may be liable depending upon who is telling the truth about the telephone conversation.
Accordingly, the judgment appealed from is reversed and set aside and the case is remanded to the trial court for further proceedings. The costs of this appeal are assessed against appellees. Other costs will await the outcome of the case.
REVERSED AND REMANDED.