298 So.2d 100 (1974)
Emmett E. BATSON
v.
TIME, INC., and David Chandler (two cases).
Nos. 9885, 9923.
Court of Appeal of Louisiana, First Circuit.
June 28, 1974.
Rehearing Denied August 13, 1974.
Writ Refused September 18, 1974.
*102 Cicero C. Sessions, Robert E. Winn and Robert E. Barkley, Jr., New Orleans, for appellant.
Donald C. Theriot, Baton Rouge, for appellees.
Before LANDRY, SARTAIN and BLANCHE, JJ.
LANDRY, Judge.
Time, Inc. and David Chandler (Defendants) have appealed from a judgment of the trial court rejecting Defendants' motions for summary judgment in this action by Emmett E. Batson (Plaintiff), for damages for alleged defamation by an article published by Defendants in Life Magazine. We ex proprio motu ordered defendants to show cause why Defendants' appeals should not be dismissed on the ground that LSA-C.C.P. art. 968 prohibits appeal from a judgment denying a motion for summary judgment. On issuance of our rule, Defendants alternatively applied for supervisory writs on the ground that denial of appeal would result in irreparable injury to Defendants, in violation of Defendants' rights to freedom of speech and freedom of the press, as guaranteed by the First and Fourteenth Amendments to the United States Constitution, and as also proclaimed in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, and its innumerable progeny. We consolidated the motion to show cause and Defendants' applications for writs of certiorari and review. We dismiss Defendants' appeals, we recall the alternative writs issued herein, we affirm the judgment of the lower court, and remand this matter for further proceedings.
This matter was initiated in the Nineteenth Judicial District Court, East Baton Rouge Parish, and removed by Defendants to the United States District Court, Eastern District, Baton Rouge Division. The Federal District Court remanded the matter to the State Court. In the State Court, Defendants filed exceptions of no right and no cause of actions which were overruled. Defendants then filed motions for summary judgments which were also denied.
Defendants basically contend, on authority of New York Times, above, and the innumerable cases spawned thereby, that Defendants' rights of freedom of speech and freedom of the press, as guaranteed by the First and Fourteenth Amendments, have been violated by the trial court's denial of their motions for summary judgment. Defendants correctly argue that New York Times, above, and the plethora of Federal cases dealing with the issue, have engrafted upon and into every action for libel or defamation involving a matter of public interest, the requirement that, on defendant's motion for summary judgment, plaintiff must show with convincing clarity, facts which justify the conclusion that defendant published the allegedly defamatory article with malice, meaning with knowledge of the statement's falsity, or with reckless disregard of whether the statement was true or false. Cervantes v. Time, Inc., 464 F.2d 986 (1972) Eighth Circuit; Miller v. News Syndicate Co., Inc., 445 F.2d 356 (1971) Second Circuit; Bon Air Hotel, Inc. v. Time, Inc., 426 F.2d 858 (1970) Fifth Circuit; Time, Inc. v. McLaney, 406 F.2d 565 (1969) Fifth Circuit.
With propriety, Defendants also contend that on trial of a defendant's motion for summary judgment in an action for libel, plaintiff must establish by affidavits, interrogatories, or otherwise, that a dispute exists as to a genuine issue of material fact regarding defendant's alleged actual knowledge of falsity, or reckless disregard for the truth or falsity of the offensive publication, to preclude defendant's right to summary judgment under the First and Fourteenth Amendments. Cervantes *103 v. Time, Inc., above; Gospel Spreading Church v. Johnson Publishing Co., Inc., 147 U.S.App.D.C. 207, 454 F.2d 1050 (1971) D.C. Circuit; Time, Inc. v. Ragano, 427 F.2d 219 (1970) Fifth Circuit; Bon Air Hotel, Inc. v. Time, Inc., above; Goldwater v. Ginzburg, 414 F.2d 324 (1969) Second Circuit; Washington Post Company v. Keogh, 125 U.S.App.D.C. 32, 365 F.2d 965 (1966) D.C. Circuit; Davis v. National Broadcasting Company, 320 F. Supp. 1070 (1970), E.D.La.
Defendants also correctly contend that the foregoing Federal jurisprudence is based on the premise that summary dismissal of a libel action, where plaintiff fails to make the required initial showing, is constitutionally mandated to avoid the abhorred and constitutionally reprobated "chilling effect" that the prosecution of an unfounded libel action would otherwise have on the fundamental guarantee of freedom of speech and freedom of the press. Bon Air Hotel, Inc. v. Time, Inc., above; Time, Inc. v. McLaney, above; Washington Post Company v. Keogh, above; Davis v. National Broadcasting Company, above. Stated otherwise, the Federal authorities have repeatedly held that, unless plaintiff in a libel action is required to make such a preliminary showing on defendant's motion for summary judgment, the ever present threat of harrassment and expensive, time-consuming litigation could so erode and infringe upon the rights of freedom of speech and freedom of the press as to seriously impede, if not nullify, these constitutional previleges. Bon Air Hotel, Inc. v. Time, Inc., above; Time, Inc. v. McLaney, above; Washington Post Company v. Keogh, above.
Defendants' contention that the foregoing rules of constitutional law are applicable in defamation actions in state courts needs no authoritative support.
Plaintiff is former Chief Counsel for the Louisiana State Department of Revenue (Department). The Department's duties include, among others, collecting state taxes and filing suits for the enforcement and collection of unpaid or delinquent taxes. The Department has no criminal jurisdiction or authority to prosecute for criminal violations of tax laws.
The allegedly libelous article, entitled "The `Little Man' is Bigger Than Ever", appeared in the April 10, 1970, issue of Life Magazine, a weekly published by defendant Time. Subject article was a sequel to three prior articles by Life dealing with the reputed presence of the Cosa Nostra in Louisiana.
The article in question purports to link one Carlos Marcello, whom the article suggests is a member of the Mafia or Costa Nostra, to plaintiff and other state officials. A portion of the article is captioned: "FOR MARCELLO THERE IS NEVER A SHORTAGE OF HELPFUL MEN IN HIGH PLACES." Under this heading, plaintiff's photograph appears with those of four other state officials. Beneath plaintiff's picture is the statement: "Last year he was promoted to chief counsel." In previous paragraphs, the article recites:
"The state officials he is known to have dealt with are still in officesome have even been promoted.
"One area in which Marcello's influence is particularly effective is the State Revenue Department. In this office, charged with collecting all state taxes, the Mob boss seems able to control the hiring and placement of agents and can manipulate state auditing procedures at will. High-lever revenue officials have admitted to Life that the surest solution for a Louisiana businessman seeking a tax settlement is to approach the Department through Carlos Marcello.
"An example of plain laxity was the nullification last year of a long-standing tax claim for $32 million against a large national corporation that operates in Louisiana. The claim was allowed to expire on the desk of Emmett Batson, the department *104 attorney then in charge of prosecuting state income tax evasions."
Plaintiff contends the foregoing statements are defamatory in that: (1) They convey the unequivocal impression that plaintiff knows Marcello personally; that plaintiff, in his official capacity has helped Marcello avoid payment of state taxes, and that plaintiff was promoted to Chief Counsel because of plaintiff's alleged relationship with Marcello; (2) they indicate that plaintiff could be corruptly influenced by Marcello to improperly settle tax claims for third parties; (3) they imply, if not expressly state, that plaintiff improperly permitted a $32,000,000.00 tax claim to prescribe, and (4) they give the impression that plaintiff's duties include civil and criminal prosecution of tax matters but that plaintiff, as counsel for the Department, had never instituted either type action.
Defendants' motions for summary judgment assert that the article concerns an area of legitimate public interest, and that it was published without knowledge of falsity, in the complete belief that all remarks therein concerning plaintiff were true and correct. In support of their motions for summary judgment, Defendants contended that maintenance of plaintiff's action, in the absence of plaintiff showing actual malice, would deprive Defendants of their rights under the First and Fourteenth Amendments to the United States Constitution. Additionally, Defendants maintained there existed no genuine issue of material fact, and that Defendants were entitled to summary judgment of dismissal as a matter of law. In support of their contentions, Defendants introduced affidavits by Defendant Chandler and the following employees of Life Magazine: Russell Sackett (then Senior Editor); Thomas Flaherty (then Associate Editor); Janice Pikey (then Reporter), and John Dowd (then Editorial Counsel).
Chandler's affidavit recites that he investigated the subject matter and compiled the data for the article in question, which data was accumulated by investigations conducted within the State of Louisiana. Chandler asserts that he conducted interviews with high-level officials of the Department, especially including Millard Byrd, then Director of the Department's Miscellaneous Tax Division. The affidavit further alleges that, based on an interview with Byrd, and on physical evidence of dismissal of a tax case against Sperry-Rand Corporation, Chandler reported that Plaintiff allowed a $32,000,000.00 tax claim to expire on Plaintiff's desk. The affidavit concludes with Chandler's assertion of the belief that the article was true when published by Life, and that Chandler retained that belief.
Plaintiff opposed the motion for summary judgment with Plaintiff's own affidavit and an affidavit by W. W. McDougall, former Commissioner of Administration, State of Louisiana. Plaintiff's affidavit denies any connection between Plaintiff and organized crime or the Cosa Nostra. The affidavit also denies that any tax claim in the sum of $32,000,000 was ever handled by the Department. In addition, Plaintiff's affidavit denies any connection between Plaintiff and the Chrysler Corporation case (a matter hereinafter explained), other than that Plaintiff's name appeared as attorney for the Department on briefs filed by the Department in that matter. Plaintiff's affidavit further denies that Chandler ever questioned Plaintiff concerning any of the recited facts and circumstances. In conclusion, Plaintiff's affidavit states that the tax claim against Sperry-Rand was dismissed at the direction of the Department's then General Counsel.
The affidavit of W. W. McDougall pertinently recites:
"In early 1969, Mr. David L. Chandler, a reporter for Life Magazine, came to my office, and informed and/or questioned me about a $32,000,000 tax claim which he alleged the Department of Revenue had allowed to prescribe.

*105 "In view of Mr. Chandler's allegations that the Department of Revenue had allowed a $32,000,000 tax claim against the Sperry-Rand Corporation prescribe, I contacted Mr. Emmett E. Batson, an attorney for the Department of Revenue on whose desk the claim was allegedly allowed to prescribe. Mr. Batson informed me that the Department of Revenue had never handled a $32,000,000 tax claim against anyone, including Sperry-Rand, and that he had never handled the tax claims against Sperry-Rand. Mr. Batson informed me that the Revenue Department had entered into an agreement in 1955 with Sperry-Rand not to pursue the Sperry-Rand case pending a final decision in an identical case involving Chrysler Corporation, the U. S. Government and the Michoud Ordinance Plant in New Orleans, Louisiana.
"Mr. Batson informed me that the Chrysler case was litigated in both State and Federal Court and was finally decided against the State of Louisiana by the United States Court of Appeals for the Fifth Circuit, and that the U. S. Supreme Court had declined to review this decision. Mr. Batson further informed me that in 1968 the Revenue Department made the decision not to pursue the tax claim against Sperry-Rand because of the decision in the Chrysler case.
"At my request, Mr. Batson brought me the Department of Revenue legal file on the Sperry-Rand case and the Court of Appeals decision in the Chrysler case, all of which confirmed Mr. Batson's statements to me. In addition to this information, I also contacted Mr. Cicero Sessions who was the attorney who represented Sperry-Rand in its tax case and another attorney who had been involved in the Chrysler case, but whose name I cannot recall at this time. Both Mr. Sessions and the other attorney confirmed Mr. Batson's statements to me.
"All of the information concerning this matter that I had obtained as set out above was communicated to Mr. David L. Chandler prior to April 10, 1970."
The trial court denied Defendants' motions for summary judgment upon finding that a genuine issue of material fact existed regarding Chandler's knowledge of the facts attending the Sperry-Rand tax claim as set forth in McDougall's affidavit. In this connection, the trial court noted the absence in Defendants' affidavits of reference to Chandler's alleged interview of McDougall.

DEFENDANTS' RIGHT TO APPEAL
Defendants concede that LSA-C.C.P. art. 968 expressly provides that no appeal shall lie from a judgment denying a motion for summary judgment. Nevertheless, Defendants assert a constitutional mandate for summary judgment in an action of this nature, unless Plaintiff establishes, at the outset of the litigation, that the article was published with malice. Consequently, Defendants argue that an appeal herein is constitutionally required to protect Defendants' rights of freedom of speech and freedom of the press. In effect, Defendants argue that a defendant in a libel action is entitled to final adjudication of his right to summary judgment before plaintiff may proceed to trial on the merits. Defendants so contend on the basis that, to hold otherwise, would foster, promote and encourage the so-called "chilling effects" which have been constitutionally reprobated as an infringement upon the fundamental rights involved herein. Defendants have cited no authority which expressly so holds.
Our review of the innumerable Federal authorities on the subject leads to the conclusion that the constitutional considerations involved herein require only initial judicial determination of whether plaintiff has shown facts from which a jury could find actual malice. Time, Inc. v. McLaney, 406 F.2d 565 (1969) Fifth Circuit; Goldwater v. Ginzburg, 414 F.2d 324 (1969), Second Circuit.
*106 In McLaney, above, the court considered an appeal from a judgment denying defendant's motion for summary judgment in a libel action. The court noted that prior to adoption of the 1958 amendment to 28 U.S.C.A. § 1292 by the addition of Subdivision (b), no appeal could be taken from an order denying a motion for summary judgment because such an order was not final. The court also observed, however, that the addition of Subdivision (b) enabled an appellate court to grant an appeal, in its discretion, where the trial court has stated in writing, in an interlocutory order, that the order involves a contradictory question of law concerning which there is substantial ground for difference of opinion, and that immediate appellate review may materially advance the ultimate termination of the litigation. We think the unmistakable tenor of McLaney is that no appeal lies, as a matter of constitutional right, from a judgment dismissing a defendant's motion for summary judgment in a libel proceeding.
Goldwater v. Ginzburg, above, involved an appeal by defendant from a judgment rendered on the merits in favor of plaintiff in a libel action after dismissal of defendant's motion for summary judgment. In Goldwater, the appellate court expressly noted its prior dismissal of defendant's appeal, pursuant to 28 U.S.C.A. § 1292, Subdivision (b), from the trial court's interlocutory ruling rejecting defendant's motion for summary judgment. The unmistakable import of Goldwater, above, is that no appeal lies of right from an order rejecting a motion for summary judgment in an action for libel.
Defendants argue further that an appeal should lie pursuant to LSA-C.C.P. art. 2083, which permits an appeal from an interlocutory judgment which causes irreparable injury. Article 2083 is general in nature. LSA-C.C.P. 968, which expressly prohibits appeal from an order refusing a motion for summary judgment, is special. It is elementary that a special statute takes precedence over one general in nature.
We readily acknowledge that a judgment denying a motion for summary judgment may be held to constitute irreparable injury in a libel action where defendant shows that his motion for summary judgment was improperly denied. Assuming this to be so in this instance, under the plain language of Article 968, our legislature has expressly provided that no appeal shall lie from an order denying a motion for summary judgment. We cannot change the law. Neither can we grant an appeal where an appeal is expressly prohibited by law.
We can, however, exercise our constitutional supervisory writ jurisdiction to review judgments of lower courts where adequate remedy does not exist by appeal, and where irreparable injury might otherwise result. This we elected to do by granting the alternative writ hereinafter considered.
The appeals taken by defendants, Time, Inc. and David Chandler, are dismissed.

APPLICATION FOR WRITS OF REVIEW
Plaintiff concedes this matter falls within the public interest principle announced in New York Times Co. v. Sullivan, above. Defendants contend that Plaintiff must establish, with convincing clarity, that the publication was made with actual malice, otherwise Plaintiff's action must be dismissed. Defendants also assert their constitutional right to summary judgment unless Plaintiff proves facts which establish actual malice. Additionally, Defendants maintain they had the right to rely upon Chandler's reputation for veracity and integrity as well as upon Chandler's history of past competency and efficiency in the investigative and reporting field.
Defendants argue that in determining whether Plaintiff has made the requisite initial showing, all of the following factors have been held insufficient to establish *107 malice or to create an inference thereof: (1) The nature of the alleged defamatory statements; (2) defendant's failure to retract the statements; (3) defendant's failure to seek out plaintiff and verify the facts before publication; (4) defendant's failure to investigate; (5) negligence on defendant's part; (6) error of judgment on defendant's part; (7) intent to inflict harm, and (8) ill will. In support of these contentions, Defendants rely upon Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971); Time, Inc. v. Pape, 401 U.S. 279, 91 S.Ct. 633, 28 L.Ed.2d 45 (1971); Greenbelt Pub. Ass'n v. Bresler, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970); St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); Time, Inc. v. Hill, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967); Beckley Newspapers Corp. v. Hanks, 389 U.S. 81, 88 S.Ct. 197, 19 L.Ed. 2d 248 (1967); Henry v. Collins, 380 U.S. 356, 85 S.Ct. 992, 13 L.Ed.2d 892 (1955); Garrison v. Louisiana, 379 U.S. 64, 85 S. Ct. 209, 13 L.Ed.2d 125 (1964); New York Times Co. v. Sullivan, 376 U.S. 254, 84 S. Ct. 710, 11 L.Ed.2d 686 (1964); United Medical Laboratories v. CBS, 404 F.2d 706 (1968) Ninth Circuit; Hurley v. Northwest Publications, Inc., 273 F.Supp. 967 (D.Minn.1967), affirmed, 398 F.2d 346 (1968) Eighth Circuit; Washington Post Co. v. Keogh, 125 U.S.App.D.C. 32, 365 F. 2d 965 (1966) D.C. Circuit, cert. denied, 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548; New York Times Co. v. Connor, 365 F.2d 567 (1966) Fifth Circuit.
It is Defendants' position that, viewed in the light of the foregoing criteria, Plaintiff's pleadings and affidavits fail to show actual malice; consequently, it is urged, the motion for summary judgment must be sustained. We disagree with Defendants' conclusions in this regard. We note, incidentally, that most of the authorities cited in the next preceding paragraph dealt with cases tried on the merits, not with motions for summary judgment.
In cases involving trials on the merits, it has been repeatedly held that plaintiff in a libel action must establish affirmatively, and with convincing clarity, that the publication complained of was issued with actual malice. Rosenbloom v. Metromedia, 403 U.S. 21, 91 S.Ct. 1811, 29 L.Ed.2d 296; Time, Inc. v. Pape, 401 U.S. 279, 91 S.Ct. 633, 28 L.Ed.2d 45; St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262; Time, Inc. v. Hill, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456; Curtis Pub. Co. v. Butts and Associated Press v. Walker, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094; New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686. Said authorities define malice to mean the statements were published with actual knowledge of their falsity, or with reckless disregard as to their truth or falsity.
Defendants correctly assert that the chilling effects of a lengthy and costly trial upon their First Amendment rights is an element of legitimate concern. We also agree with Defendants' contention that close scrutiny of the evidence presented to establish the constitutional standard of actual malice, is appropriate in disposing of a motion for summary judgment in a libel action. Bon Air Hotel, Inc. v. Time, Inc., 426 F.2d 858 (1970) Fifth Circuit; Time, Inc. v. McLaney, 406 F.2d 565 (1969) Fifth Circuit; Washington Post Company v. Keogh, 125 U.S.App.D.C. 32, 365 F.2d 965 (1966) D.C. Circuit; Thompson v. Evening Star Newspaper Company, 129 U.S.App.D.C. 299, 394 F.2d 774 (1968) D.C. Circuit.
Equally pertinent, however, is the well established rule that in cases of this nature, the courts are most careful to protect plaintiff's right to jury trial, when disposing of a motion for summary judgment pursuant to F.R.Civ.P. Rule 56. In applying Rule 56, the courts note the Rule's provision that, on trial of a motion for summary judgment, plaintiff may not rely upon his pleadings but must, by affidavit *108 or otherwise, set forth facts and allegations which establish the existence of a genuine issue of material fact. Also in applying Rule 56, the courts grant summary judgment where the pleadings, depositions, answers to interrogatories, affidavits and admissions disclose the absence of a genuine issue of material fact.
More importantly, the Federal cases have repeatedly held that in a defamation action, as in other actions, the adverse party against whom summary judgment is requested is entitled to have all the evidence, depositions, affidavits and inferences reasonably drawn from them, viewed in the light most favorable to him in determining whether he has shown the existence of a genuine issue of material fact. Time, Inc. v. Ragano, 427 F.2d 219 (1970) Fifth Circuit; Bon Air Hotel, Inc. v. Time, Inc., above; Goldwater v. Ginzburg, 414 F.2d 324 (1969) Second Circuit; Time, Inc. v. McLaney, above.
Considering Plaintiff's pleadings and affidavits, especially McDougall's affidavit, in the light most favorable to Plaintiff, we find, as did the trial court, that McDougall's affidvit poses a genuine issue of material fact regarding actual malice, at least concerning the statement regarding Plaintiff's action in the Sperry-Rand matter. We are of the view that McDougall's affidavit poses facts which, if true and believed by a jury, would justify judgment in favor of Plaintiff. Having established such facts, Plaintiff has met the constitutional standard involved.
On authority of Firestone v. Time, Inc., 460 F.2d 712 (1972) Fifth Circuit, Defendant Time maintains it was entitled to rely upon Chandler's reputation and past record of competency. We reject this contention upon finding that the affidavits of Chandler and Sackett established facts on which a jury could conclude Chandler was Time's employee with respect to the article in question.
Sackett's affidavit recites that in late 1967, Chandler was assigned by Life to follow the progress of the efforts of then Louisiana Governor, McKeithen, to rid Louisiana of alleged Mafia influence. The affidavit also states that Chandler began filing materials and dispatches with Life. Sackett also recites that he made several trips to Louisiana prior to issue of subject article. During these trips, Sackett conferred with Chandler and assisted Chandler in conducting interviews and reporting for the article. Sackett also avers that the final article was written by him. In writing the article, Sackett notes that he utilized drafts written by Chandler at Sackett's request and direction, and also utilized Chandler's earlier materials and dispatches, plus notes and documents gained from Sackett's joint interviews with Chandler, together with materials taken from the files of Life's investigative group. Sackett's affidavit concludes by noting that throughout preparation for the article, he worked in close and constant collaboration with Chandler.
Chandler's affidavit recites that he was under contract with Time, Inc. from 1967 to 1971; that he was a special correspondent for Life Magazine as regards subject article and, as special correspondent, he was a member of the Life investigative and reporting team.
Viewed in the light most favorable to Plaintiff, the foregoing affidavits pose a genuine issue of material fact regarding whether Chandler was Life and Time's employee, for whose actions defendant Time is legally responsible.
Firestone v. Time, Inc., 460 F.2d 712, relied upon by Times as authority for the proposition that it is not liable for Chandler's action, is factually inapposite.
The alternative writs of certiorari and mandamus issued herein are recalled, and this matter remanded to the trial court for *109 further proceedings consistent with the views herein expressed; all costs of this appeal and application for writs to be paid by defendants, Time, Inc. and David Chandler.
Appeal dismissed, writs recalled and matter remanded to the trial court.