KLIEBERT, Judge.
This writ application arises in an action for defamation brought by Colonel George L. Haas, Jr., a deputy sheriff in the Parish of Jefferson, against The Times-Picayune Publishing Corporation and James Gill, based on a column written by Gill and published in The Times-Picayune/The States Item newspaper. After the trial court denied the defendants’ motion for summary judgment an application for supervisory writs was filed with this court. Since we saw no error of law in the trial court’s denial of the motion for summary judgment, we denied the application. Thereafter, our supreme court granted defendants’ application and referred the matter to us for briefing, argument and opinion. See 519 So.2d 109. Having reviewed the record, received briefs and heard arguments, for the reasons which follow we affirm the ruling of the trial court dismissing the motion for summary judgment and remand the case to the trial court for further proceedings.
FACTS
James Gill is employed by The Times-Picayune Corporation to write four columns per week on subjects of interest to residents of the New Orleans Metropolitan area. Gill’s column is published on the Opinion/Editorial (Op-ed) pages of the newspaper under the category “OTHER OPINIONS/Columns.” The remaining categories on the Op-ed pages are “YOUR OPINIONS/Letters” and “OUR OPINION/Editorials.” The January 27, 1986 edition of the Times Picayune included the following column:
*370 [[Image here]]
In his petition Colonel George L. Haas, Jr. averred the column intentionally misled the general public into believing the quoted radio communication actually took place and Gill acted with malice and knowledge that all statements pertaining to radio communications between Haas and other police personnel were false. Haas contended the column, as published, was false, libelous, and malicious and was intended to belittle, degrade, ridicule, and defame him in the eyes of his friends, employer, and the general public by depicting him as incompetent.
The defendants’ initial response was a motion for summary judgment (filed prior to an answer) based on the following alternative contentions:
(1) The column was based on the earlier factual news article and was a fictionalized account of purported conversations which no reasonable person would have understood to describe a real conversation; thus, it was a constitutionally protected expression of opinion rather than a statement of fact;
(2) The underlying basis of the column was true or substantially true.
In support of their motion for summary judgment defendants submitted affidavits by Gill and Nancy Burris, the Times-Picayune librarian, and a section of the January 27, 1986 edition showing the placement of the column in the newspaper. In opposition to the motion plaintiff submitted copies of Gill’s columns and nine “citizen” affidavits reflecting the affiant’s belief the column was a factual account of actual radio communications. The motion was submitted to the trial court on briefs filed by each party.
In the district court counsel for the defendants strenuously urged the sole and *371 threshold issue was whether the column was an expression of opinion or an expression of fact, with the resolution of same being a question of law as opposed to a question of fact. The trial court noted in its reasons for judgment that it was “not asked to determine whether the plaintiffs suit for defamation had merit.” Rather, it considered the sole issue before the court to be as stated by the defendants, i.e., whether the Gill column could reasonably be understood as describing actual conversations. The trial court recognized the resolution of the issue involved a question of law rather than of fact and accordingly disregarded the affidavits submitted by plaintiff. It resolved the issue by concluding “a reasonable reader perusing the column, taking into account the entirety of the column and the context in which it was published, could have concluded that the column was intended to be read literally,” and accordingly dismissed the motion for summary judgment.
Consistent with the action taken in the trial court, in appellate brief defendants state that the sole issue presented for review is a question of law which is to be resolved by resolving the threshold issue; i.e, whether the column constitutes an expression of opinion or an assertion of fact. Counsel for the plaintiff agreed and in oral argument summed up his version of the issue as: “We say they were lying as to the facts and they say they were only kidding.”
Summary judgment is designed to dispose of frivolous demands and defenses. It is appropriate only when there is no genuine issue of material fact and mover is entitled to judgment as a matter of law. LSA-C.C.P. Article 966. There is no appeal from a refusal to grant a summary judgment. However, a defendant is constitutionally entitled to summary dismissal of a libel suit unless the plaintiff can show the requisite elements of the defamation, for otherwise the threat of litigation would have a chilling effect on freedom of the press. Schaefer v. Lynch, 406 So.2d 185 (La.1981). Here, no one disputes the fact the plaintiff is a public official or public figure.[1] Nor is there any dispute as to the contents of the column, the context in which it was published, its location in the particular issue of the newspaper, or that there were no actual tapes.
Available defenses to a defamation action are truth and privilege. Included within the defense of privilege is fair comment, i.e., expressions of opinion about matters of public concern made without knowing or reckless falsity. New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); Mashbum v. Collin, 355 So.2d 879 (La.1977). A statement is not actionable as a matter of constitutional law, when the context in which it is made indicates that it is opinion or rhetorical hyperbole.[2] Letter Carriers v. Austin, 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974). Some well recognized forms of writing and expressions, such as satire, parody, and cartoons, have been considered as opinions and thus privileged under the First Amendment rights, although reported in context as facts. Hustler Magazine and Larry C. Flynt v. Jerry Falwell, — U.S. -, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988). Thus, to be square with the First Amendment privilege of “fair comment” where a public official is the subject of the article, the State can impose liability for defamation only when the publication contains a false statement of fact which was made with “actual malice,” i.e., with knowledge that the statement is false or with reckless disregard as to whether or not it was true. See Schaefer v. Lynch, supra; Hustler Magazine and Larry C. Flynt v. Jerry Falwell, supra. Moreover, since Gertz v. Robert Welch, Inc., 418 U.S. *372 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the overwhelming weight of federal authority is that in deciding whether the statement falls within the constitutional privilege of “fair comment,” the distinction between opinion and fact is a matter of law. Oilman v. Evans, 750 F.2d 970 (D.C.Cir. 1984), cert. denied, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985). Thus, our function at this stage of the proceedings is to decide whether the actions of Haas, as described by Gill, could reasonably be understood as describing actual facts about Haas or actual events in which he participated.
Defendants characterize the column as a “fictional conversation,” “tongue in cheek,” “purely satirical,” and argue that the three-days-earlier news article, the placement of the column on the Op-ed page, its title (Drunk versus sober in Jefferson), the extensive use of “exaggerated language” (Jeeze, man. That’s oP Gene, plastered, polluted, the Sheriffs fancy ranks), puns (the reference to Chief Fields as having trouble detecting the center line of the road) and the “highly unlikely” content of the conversation alerted reasonable persons of ordinary intelligence and sensitivity that the column did not describe an actual conversation. We do not agree with the characterization.
The test is to determine whether the column in the context presented could be reasonably understood by persons of ordinary intelligence and sensitivity as describing actual facts about the plaintiff or actual events in which the plaintiff participated. If it could not be so understood, the charged portions cannot be taken literally, and hence would fall within the First Amendment privilege. Pring v. Penthouse, Intern., Ltd., 695 F.2d 438 (10 Cir., 1982).
Although a journalist familiar with the organizational makeup of the paper, or a person having actual knowledge of the facts, may be influenced in his deliberation as to whether the column reports opinion by the placement of the column on the editorial pages, and/or by the appearance of a news article on some other date and in some other place in the newspaper, the standard to be applied is not that of a journalist or a person with actual knowledge but, rather, that of reasonable persons of ordinary intelligence and sensitivity. In our opinion, the column would not necessarily clue such a reader that Gill is “fictionalizing” the conversation between the law enforcement officers. Gill states that “the reason for this disciplinary action (Fields’ suspension) can be gleaned from a radio room tape at State Police headquarters” and that “A transcript of that conversation (between Trooper Miller and Col. Haas) has also been obtained.” The exaggerated language (polluted, Jeeze, sleuth, plastered, cool ones) is local slang which may be heard on any street comer and in any station house, and the title “Drunk versus sober in Jefferson” does not import humor but, rather, a serious social concern.
By interposing the “fictionalized” conversation into a column which also reported actual facts, without establishing a line of demarcation between fact and fiction, Gill reported as a statement of fact that the conversations took place and he had copies of the tapes as set forth in his column. Further, the mere placement of Gill’s column in the “Other Opinions/Columns” section of the paper does not necessarily warrant a finding that the pertinent portion of the column was an expression of opinion. Also, there was no connexity between the prior news article on the incident and Gill’s column; hence, there was nothing to alert the reader from the news article that Gill’s column was a statement of opinion.
Aside from the question of opinion or fact for purposes of the Federal Constitution’s guaranteed privilege of “fair comment,” for the first time in oral argument before us, counsel for the defendants urge us to grant the motion for summary judgment because when taken as a whole and fairly read, the statements contained in the column were not capable of having a defamatory meaning. We disagree. The statements attributed to Haas included the expressed intention of concealing the *373 events from road deputies and the MADD organization. Thus, Haas is depicted as deceitful. Moreover, the entire column is calculated to produce the impression that Haas and the other officer gave special consideration to Fields because of his position with the Sheriffs office and hence failed to perform their duty of investigating criminal activities and apprehending suspects. This failure may, itself, be a violation of law. (See LSA-R.S. 14:134). Also, the statements attributed to Haas have a tendency to deprive him of the benefits of public confidence and injure him in his occupation.
As we view the case we are not asked to, nor do we pass on the merits of the plaintiffs suit. Rather, as directed in Mash-bum, supra, our scope of review is to examine in depth the column at issue and the context in which published.
Having done so, we conclude, as did the trial judge, that since the column states that the transcripts of conversations between the law enforcement officers were obtained by Gill and printed in the column, reasonable persons of ordinary intelligence could understand the statements and actions attributable to Col. Haas, as set forth by Gill, to be statements of fact. Therefore, in our view, the trial court was correct in denying the motion for summary judgment on these questions of law. It is not for this court to decide at this stage whether Haas was in fact defamed and suffered damages as a result thereof. Rather, these are questions of fact which have to be submitted to the trier of fact for decision.
Accordingly, the trial court’s ruling is affirmed and the case is remanded to the trial court for further proceedings.
RULING AFFIRMED; CASE REMANDED.

. See Thompson v. St. Amant, 250 La. 405, 196 So.2d 255 (1967) reversed St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262. Also, plaintiff’s counsel in oral argument conceded his client was a public official for purpose of inquiry into the privilege of "fair comment” under the First Amendment.

. Webster's Third Ed. Dictionary (1907) defines hyperbole as extravagant exaggeration that represents something as much greater or worse, or more intense than it really is or that depicts the impossible as actual.