ON APPLICATION FOR SUPERVISORY WRITS
COLE, Justice,
dissenting.
Because I disagree with both the majority’s result and its method of disposing of the plaintiff’s claim, I respectfully dissent.
This is a defamation action which comes before the Court on the defendants’ application for supervisory writs of certiorari, prohibition and mandamus to review the Court of Appeal’s denial of their motion for summary judgment. On remand from this Court,[1] the Court of Appeal, by Kliebert, J., unanimously affirmed the trial court’s denial of summary judgment and ordered the case to proceed to trial. Haas v. Gill, 527 So.2d 368 (La.App. 5th Cir.1988). A majority of this Court summarily reversed the Court of Appeal, and without the benefit of briefing and argument, granted summary judgment for the defendants. No reasons were assigned.[2]
Most of the pertinent facts are set out in the opinion of the Court of Appeal. 527 So.2d at 368-371. Since the majority found it unnecessary to offer an opinion in support of its decision to reverse the Court of Appeal and the trial court, one can only assume it accepts the facts shown in the record below. Haas brought this defamation action in response to a column authored by defendant Gill which appeared in the Times Picayune/The States Item on January 27, 1986.[3] The column purported to be the transcripts of radio room tapes of conversations dealing with Haas’s involvement in a coverup of a State Trooper’s detention of Deputy Chief Gene Fields of the Jefferson Parsih Sheriff’s Department. The conversations are reported as such, complete with quotation marks and colloquial expressions. Haas contends the column was factually false, malicious, and intended to subject him to hatred, ridicule and contempt. A reading of the column at issue justifies Haas’s concerns.
The defendants do not deny the falsity of the statements in the column. They do not claim the “conversations” reported by Gill actually occurred. Instead, they argue the conversations were fictionalized and no “reasonable person” would have read the column as reporting actual conversations. They contend the placement of the column on a page entitled “OTHER OPINIONS/Columns” was a clear sign the column was opinion and not fact. This claim is patently absurd. The majority may be able to take judicial notice of the fact no reporting of “facts” occurs on newspaper editorial pages but I cannot. Columnists regularly use this forum to disclose secretly obtained information. In such situations it is not unusual to observe loose cannons on the deck of journalism. Irresponsible columnists sometimes sail upon a sea of yellow ink, submerging in their wake the privacy and sensibilities of persons not possessed of the pov/er and means of the Third Estate. Often, of course, “opinion” columns are used for constructive purposes and in the public interest. It is possible to pursue these laudable ends and at the same time maintain a balance between First Amendment rights and the constitutional rights afforded the individual. The exer *459 cise of restraint by responsible editors ensures such a result.
The defendants also argue the column was plainly récognizable as a “tongue in cheek” or satirical piece from the use of colloquial language such as “Jeeze man,” “ol’ Gene,” “plastered,” “polluted,” etc. I submit such language adds more to the realism of the piece than it does to its satiric tone. If a real conversation were reported, one would reasonably expect the language used to be less than the King’s English. Unlike the majority, I cannot say, as a matter of law, no reasonable person reading the column would fail to recognize the conversations reported as “satire.”[4]
Assumedly, the majority does not contend the Court of Appeal erred in its summary of the First Amendment law applicable here. The defendants themselves admit as much. See Defendants’ Application for Writs at 18. The threshold question, whether the statements complained of are actionable statements of fact or constitutionally protected opinions, is characterized as one of law for the court. See Mashburn v. Collin, 355 So.2d 879, 884 (La.1977). In Mashbum, this Court adopted the constitutionally permissible test “whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker’s or writer’s opinion or a statement of existing fact.” Id. at 885. The Court goes on to say: “In order for a statement to be defended as fair comment it must be recognizable by the ordinary reasonable person as opinion and not as a statement of fact.” Id. at 886. In Mashbum, we indicated the reviewing court should look to the totality of the circumstances in making this “legal determination.”[5] The Court of Appeal followed these steps only to find itself summarily reversed. The silence of the majority leaves the continued vitality of the Mashbum test in doubt but offers no alternative for the guidance of our lower courts.
A matter of equal concern is the harm this decision does to our summary judgment jurisprudence. Under Article 966 of the Code of Civil Procedure, a party is entitled to summary judgment only where the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. A denial of summary judgment is never ap-pealable of right. La.C.C.P. art. 968. The statutes do not except defamation actions from their reach, but by its grant of writs and summary reversal, the majority effectively creates such an exception by judicial fiat.
In past decisions, this Court has placed an increasingly heavy burden on libel plaintiffs who face summary judgment motions. See, e.g., Schaefer v. Lynch, 406 So.2d 185 (La.1981); Mashburn v. Collin, 355 So.2d 879 (La.1977). By its ruling here, the majority carries this process to its logical conclusion and reverses the burden of proof. In other cases, the Court notes the heavy burden a movant bears under Article 966 and has repeatedly denied writs to review denials of summary judgment. See, e.g., Employers’ Surplus Line Ins. Co. v. City of Baton Rouge, 362 So.2d 561 (La.1978); Andrew Development Corp. v. West Esplanade Corp., 347 So.2d 210 (La.1977); Morgan v. Matlack, Inc., 342 So.2d 167 (La.1977); Pace v. Zilka, 484 So.2d 771 (La.App. 1st Cir.1986), writ denied 488 So. 2d 691 (La.1986); Pennington v. F.G. Sullivan, Jr., Contractors, Inc., 416 So.2d 192 (La.App. 1st Cir.1982), writ denied 421 So. *460 2d 248 (La.1982); Adams v. Travelers Ins. Co., 420 So.2d 507 (La.App.2d Cir.1982), writ denied 422 So.2d 426 (La.1982); Verrett v. Cameron Telephone Co., 417 So.2d 1319 (La.App. 3d Cir.1982), writ denied 422 So.2d 164 (La.1982); Gela v. Hamdan, 446 So.2d 426 (La.App. 4th Cir.1984), writ denied 449 So.2d 1346 (La.1984); Christoff v. Bergeron Industries, Inc., 474 So.2d 999 (La.App. 5th Cir.1985), writ denied ill So.2d 106 (La.1985). Here, the respondent-plaintiff has the burden thrust upon him. Even in our prior libel cases, this Court has acknowledged the burden is upon the moving party. See Mashbum v. Collin, supra, at 890 (movant has burden of showing no issue of fact; reasonable inferences to be drawn in favor of party opposing motion); see also Millet v. Johnson, 381 So.2d 1293 (La.App. 4th Cir.1980), writ denied 383 So.2d 788 (La.1980); Batson v. Time, Inc., 298 So.2d 100 (La.App. 1st Cir.1974), writ denied 299 So.2d 803 (La.1974). The majority turns its back on this wealth of statutory and jurisprudential law while waving the First Amendment as a talisman.
In its haste to protect the defendant newspaper’s First Amendment rights, the majority tramples on the equally important rights of the plaintiff. A decision on summary judgment here cannot look to the First Amendment alone. As the First Circuit observed in Batson v. Time, Inc.: “Equally pertinent, however, is the well established rule that in cases of this nature, the courts are most careful to protect plaintiff’s right to jury trial, when disposing of a motion for summary judg-ment_” 298 So.2d at 107. Under our existing law, the balance is struck in favor of trial on the merits in all but the clearest cases. The majority cannot have made any attempt to balance these competing rights in its decision in this matter. In the summary reversal, there is no indication the right of the plaintiff to his “day in court” was considered. I completely agree with the full protection to which statements of opinion are entitled, but, unlike the majority, I would also extend the protection of our law to plaintiffs defamed by what to all appearances are false statements of fact. The court is the only forum where the plaintiff’s speech can answer the defendant’s speech on an equal footing. Without the judicial arena, there is no place for plaintiffs to seek equal protection against their powerful and influential adversary. They are relegated to the role of victims.
I do not contend Haas would necessarily have prevailed at a trial on the merits. This question was not before the Court. I submit, however, Haas successfully met the limited burden imposed on him by our prior decisions in Schaefer and Mashbum in the face of the defendants’ motion for summary judgment. A “reasonable person” could conclude Gill’s column was what it purported to be: a statement of facts. By its summary reversal here, the majority effectively grants newspapers total immunity from the obligation of going to trial in libel suits. If this was its intention, it should have done so forthrightly and given its reasons. If this was not its intention, Haas should have his day in Court.
Accordingly, I respectfully dissent.

.This matter was remanded to the Court of Appeal for briefing, argument and opinion on the trial court's denial of summary judgment for the defendants. See Haas v. Gill, 519 So.2d 109 (La.1988).

. Cole, J. voted to deny the writ and Calogero and Lemmon, JJ. voted to grant the writ and schedule the case for briefing, argument and opinion.

. The column is set out in full at 527 So.2d at 370.

. I am not alone in this belief. In his resistance to the defendants’ motion for summary judgment, Haas submitted an affidavit of Dr. Lloyd E. Chiasson, Jr., a journalism professor at Loyola, who found Gill had “clearly failed to make clear to his audience that the column was not written to be taken seriously.” See Defendants’ Application for Writs at 154. The majority apparently did not share the view of Dr. Chiasson who earned a Doctor of Philosophy degree in Journalism at the University of Southern Illinois.

. I am by no means convinced the First Amendment requires resolution of the fact/opinion question as a matter of law. No U.S. Supreme Court opinion has so held. The very nature of the test, i.e., what a "reasonable person” would conclude suggests a jury question. See Greenbelt Cooperative Publishing Association, Inc. v. Bresler, 398 U.S. 6, 22, 90 S.Ct. 1537, 1545, 26 L.Ed.2d 6 (1970) (White, J. concurring). The majority opinion in Greenbelt does not mandate the elevation of this basically factual question to a matter of constitutional law.